UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:                                                              Case No. 02-88020-ast
                                                                    (Jointly Administered)

TENDER LOVING CARE HEALTH CARE
SERVICES, INC., et al.,                                             Chapter 11

                                            Debtors.
-----------------------------------------------------------------X

**APPEARANCES:**

Michael L. Schein, Esq.
Vedder, Price, Kaufman & Kammholz, P.C.
1633 Broadway, 47th FL
New York, New York 10019
Attorneys for Roger Jackson Pleasant

Fred Neufeld, Esq.
Louis Anthony Pellegrino, Esq.
Milbank Tweed Hadley & McCloy
1 Chase Manhattan Plaza
New York, New York 10005
Attorneys for TLC Liquidation Trust


HON. ALAN S. TRUST, United States Bankruptcy Judge


**MEMORANDUM OPINION DENYING REQUEST FOR ATTORNEYS FEES,
AND AWARDING PREJUDGMENT AND POSTJUDGMENT INTEREST**

**Issues Before the Court and Summary of Ruling**

Pending before this Court is the request of a creditor of these bankruptcy estates

for payment of attorneys fees incurred in connection with efforts to collect an allowed

unsecured claim in these cases, as well as for prejudgment and postjudgment interest on

the allowed claim.  For the reasons herein, this Court will deny the request for attorneys

fees, and award prejudgment and postjudgment interest.

**Jurisdiction**

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

**Findings of Fact and Conclusions of Law**

The following constitutes this Court's Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The proceedings between the claimant, Roger Jackson Pleasant ("Pleasant"), and these estates have been long and involved.  The bankruptcy cases of Tender Loving Care Health Care Services, Inc., and its affiliates (collectively, "TLC") were commenced with the filing of  petitions for relief under chapter 11 on November 8, 2002. [dkt items 1][1]  Pleasant filed several proofs of claim  in the TLC bankruptcy cases, which were assigned numbers 1014,1015, 1016, and 1017.  Claim 1015 related to a prepetition promissory note in the original principal amount of $1,588,981.00 dated as of August 30, 1995, executed by one of the TLC entities (the "Note"), which Note was guaranteed by another TLC entity (the "Guaranty").  Claim 1016 related to a prepetition noncompetition agreement between Pleasant and TLC.  Claims 1014 and 1017 were duplicative of claims 1015 and 1016, respectively.

TLC objected to all of the claims filed by Pleasant. [dkt item 825]  Ultimately, by agreement between TLC and Pleasant, an Order was entered on December 1, 2004 (the "Claims Order"), which allowed claim number 1015 ("Claim 1015") as a general unsecured

---

[1] Citations to the docket refer to the docket numbers in the main case, 02-88020, under which all associated cases [02-88020 through 02-88039] are jointly administered by Court Order. [dkt item 21]

claim in the amount of $1,788,400.00, and allowed claim number 1016 ("Claim 1016") as a

general unsecured claim in the amount of $1,086,000.00. [dkt item 1009]  Claim numbers

1014 and 1017 were disallowed. Claim 1016 is not relevant to the matters presently before

the Court.

On December 20, 2004, this Court entered an Order Confirming TLC's Third

Amended Join Plan of Liquidation (the "Plan"). [dkt items 784; 1035]  Pursuant to the Plan,

the TLC Liquidation Trust was created (the "Trust"), and FTI Consulting, Inc. was

appointed as trustee of the Trust (the "Trustee").  The Trustee was authorized under the

Plan to act on behalf of the Trust and to, *inter alia*, object to claims and disburse plan

payments to creditors.

The Plan classified claims and interest as required by the Bankruptcy Code.

Pleasant's Claim 1015 was classified as a Class 5B general unsecured claim. [dkt item

784, § 3.1]  As such, Pleasant was entitled to a pro rata distribution along with other Class

5B claimholders from available funds on the Initial Distribution Date[2] and, thereafter, as

funds were available, up to payments in full.  Class 5B claims were also entitled to post-

petition interest on the "principal amount" of the claims at the initial rate of three percent

(3%) per annum, but up to the contract rate of interest for holders of Class 5B claims

"where claims are based on written contracts and agreements or entered judgments." [dkt

item 784, §§ 1.40, 1.50, 5.2.2, 6.16]  The Initial Distribution Date occurred within ten (10)

days after the Effective Date of the Plan.

The Trustee reviewed the Claims Order in preparation for making an initial

---

[2] Capitalized terms herein as used in the Plan have the definitions set forth in the Plan. [dkt item 784]

distribution to creditors.  The Trustee determined that when Claim 1015 was allowed by

agreement, an error was made, resulting in Pleasant being allowed a larger claim than he

was legally entitled to under the Bankruptcy Code.  Specifically, the Trustee believed that

under 11 U.S.C. § 502(b)(2), the Claims Order impermissibly included an award of post-

petition interest that was otherwise not allowable on an unsecured claim.  The Trustee

determined that the Trust had adequate funds to make an initial distribution equal to

92.9% of the principal portion of the allowed general unsecured claims in Class 5B.

However, the Trustee unilaterally determined that Pleasant should be paid based only on

the amount the Trustee believed Claim 1015 should have been allowed for, as opposed to

the amount set forth in the Claims Order.  Thus, the Trustee initially paid Pleasant

$1,661,423.60,[3] based on his belief that Pleasant should only have been allowed a claim

for Claim 1015 in the amount of $1,435,791.18, as opposed to the actual allowed amount

of $1,788,400.00, and that post-petition interest as provided for under the Plan should only

be calculated based upon the amount of $1,435,791.18, not the Claims Order allowed

amount of $1,788,400.00.  On or about June 9, 2006, the Trustee made a second

payment to Pleasant and other general unsecured creditors in Class 5B.  This second

payment was also based on the Trustee's calculation of Pleasant's Claim at

$1,435,791.18, not the allowed amount of $1,788,400.00.  The Trustee, therefore, paid

Pleasant a total of $439,825.73 less than Pleasant believed he should have received.

By motion dated July 13, 2006 (the "Motion") [dkt item 1176], Pleasant sought entry

of an order directing the Trustee (i) to immediately pay all amounts due and owing to

Pleasant pursuant to the Plan and the Confirmation Order, including the remaining

---

[3] This amount includes postpetition interest provided for under the Plan.

$439,825.73 due to Pleasant on account of his Claim No. 1015, and (ii) to pay approximately $25,000.00 to Pleasant for reimbursement of his costs and expenses incurred in enforcing his rights against the Trustee, and (iii) granting such other and further relief as this Court deems just and proper.

On August 14, 2006, the Trustee filed its opposition to the Motion [dkt item 1187], which this Court subsequently deemed to be a cross-motion for reconsideration and reduction of Pleasant's claim (the "Cross-Motion").

This Court issued a Memorandum of Decision and Order dated August 31, 2006 (Bernstein, *J.*), which denied Pleasant's Motion and granted the Cross-Motion of the Trustee. [dkt item 1194]  This Court treated the dispute as a motion to reconsider the allowance of Claim 1015 under 11 U.S.C. § 502(j), and to grant relief from an order entered by mistake, inadvertence, surprise, or excusable neglect under Rule 60(b) of the Federal Rules of Civil Procedure.

Pleasant appealed to the United States District Court for the Eastern District of New York [dkt item 1195], which subsequently affirmed the decision of this Court. *In re Tender Loving Health Care Servs., Inc.*, 377 B.R. 798, 808 (E.D.N.Y. 2007).

Pleasant then appealed to the United States Court of Appeals for the Second Circuit.  In a Decision dated March 26, 2009, the Second Circuit reversed the Judgment of the District Court and remanded the case to the District Court, with instructions to enter judgment for Pleasant and to remand the matter to the Bankruptcy Court for further proceedings consistent with its opinion. *In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 163 (2d Cir. 2009).  The Second Circuit essentially determined that the Trustee's Cross-Motion was untimely under Rule 60(c), as it was filed more than a year

after the Claims Order was entered.  Under Bankruptcy Rule 9024, an order which is "entered without a contest" may be challenged more than one (1) year after entry. However, because TLC had objected to Claim 1015, the Second Circuit determined that the Claims Order was not "entered without a contest." *Id.* at 163.

Further, the Second Circuit determined that Section 502(j) of the Bankruptcy Code could not be used to rescue the Trustee's Cross-Motion.  Under Section 502(j), a claim that has been allowed or disallowed may be reconsidered for cause. 11 U.S.C. § 502(j). However, the Second Circuit also determined that Section 502(j) is subject to the same one (1) year time limit as Rule 60(c) of the Federal Rules of Civil Procedure, at least with respect to orders which are not "entered without a contest."  *In re Tender Loving Care Health Servs., Inc.*, 562 F.3d  at 162.

On May 11, 2009, the United States Court of Appeals for the Second Circuit issued a Mandate to the District Court. [dkt item 1211]

By Order dated June 18, 2009, the United States District Court for the Eastern District of New York directed that "this matter is remanded to the United States Bankruptcy Court for the Eastern District of New York for proceedings consistent with the Second Circuit's Opinion." [dkt item 1212]

This Court then entered an Order on July 6, 2009, which, *inter alia*, directed that "within twenty days (20) of the date of the Order, the Trustee shall pay all amounts due and owing to Pleasant pursuant to the Plan and the Confirmation Order, including the remaining $439,825.73 due to Pleasant on account of his Allowed Claim 1015."  This Court further directed that within ten days (10) of the July 6, 2009 Order, Pleasant had to file and serve a letter setting forth his intent to pursue any other relief originally sought in

the Motion. [dkt item 1213]

On July 15, 2009, Pleasant filed a letter stating that he was seeking relief in addition to that granted in the July 6, 2009 Order (the "Requested Relief"). [dkt item 1214] The Requested Relief outlined by Pleasant was for recovery of his attorneys fees incurred in seeking to enforce his rights under the Claims Order, and for interest on the portions of Claim 1015 which were not paid in June 2006.

This Court then scheduled a hearing on the Requested Relief for September 17, 2009 (the "Hearing").  In accordance with Federal Rule of Civil Procedure 16, as incorporated by Rules 7016 and 9014 of the Federal Rules of Bankruptcy Procedure, this Court issued a Pre-hearing Scheduling Order on July 20, 2009 (the "Scheduling Order"). [dkt item 1217]  The Scheduling Order established various prehearing requirements, further discussed, *infra*.

On September 17, 2009, this Court conducted the Hearing on the Requested Relief. The parties agreed that the material facts regarding Pleasant's legal entitlement, or lack thereof, to attorneys fees and interest were not in controversy.  The parties disagreed on the outcome of both issues, and the Trustee challenged the reasonableness of Pleasant's requested attorneys fees.  After hearing the testimony of the witnesses and argument, this Court established a posthearing briefing schedule, after which this matter would be considered under submission.

## **Legal Analysis**

Pleasant's request for attorneys fees requires this Court to resolve the following issues: first, whether Pleasant's rights are governed by his prepetition agreements with TLC or by the postpetition Claims Order and/or the Plan; second, if Pleasant's rights are

governed by the postpetition Claims Order and/or the Plan, whether the Trustee breached either; third, if the Trustee breached either, whether the Claims Order, the Plan, or applicable law provides a right to attorneys fees in the event of a breach by the Trustee; and fourth, if Pleasant is entitled to attorneys fees, whether he met his burden of proving the reasonable amount thereof.  Because this Court has determined that the rights of Pleasant are controlled by the Claims Order and the Plan, and because this Court has determined that neither the Claims Order, the Plan, nor applicable law provides a right to attorneys fees in the event of a breach by the Trustee, this Court need not reach the issue of reasonableness of the attorneys fees sought by Pleasant.  However, if this Court were to reach the attorneys fees issue, it would determine that Pleasant had not met his burden of proving the reasonableness of his requested fees.

As for interest, the parties agree that Pleasant is entitled to both prejudgment and postjudgment interest on that portion of Claim 1015 which was not paid in June 2006; however, the parties disagree on how to calculate such interest.  This Court has resolved that dispute as well, and has determined that Pleasant is entitled to prejudgment interest as calculated under New York law, and postjudgment interest as calculated under the federal rate.

### Pleasant Is Not Entitled to Collect His Attorneys Fees

Pleasant argued at the Hearing that he is seeking to recover attorneys fees under the Note and the Guaranty, but not the Plan. *See* Hearing Tr. at 28:25-29:2 ("We're not seeking the right under the plan to legal fees, we're seeking our right under the note and the guarantee [sic], which is the basis of his claim."). [dkt item 1229]  However, in a late filed post-Hearing submission, Pleasant argues that he is seeking attorneys fees under the

Plan. [dkt item 1232]  Pleasant's rights are controlled by the Claims Order and the Plan, though, not the prepetition agreements. The prepetition Note and Guaranty are not the operative documents for determining whether Pleasant is entitled to the relief he seeks.[4]

The Claims Order provides that Pleasant is allowed an unsecured claim in the amount of $1,788,400.00 for Claim 1015. [dkt item 1009]  No provision in the Claims Order governs when this allowed claim would be paid, or what portion thereof would be paid. The Claims Order is simply an agreement to liquidate the amount of Pleasant's prepetition claims against the estates arising under the Note and Guaranty.  Bankruptcy Code Section 101(4), defines a "claim" to include all rights to payment, whether contingent, liquidated, or disputed. 11 U.S.C. § 101(4).  Bankruptcy Code Section 502(b) provides for the allowance of a claim to which an objection is filed. 11 U.S.C. § 502(b).  The Claims Order resolved any dispute as to the amount Pleasant was owed under the Note and Guaranty, removed any contingency as to his right to payment, and liquidated the amount owing.  The percentage Pleasant would be paid and when he would be paid, however, were not resolved by the Claims Order.

The allowance of a claim has several and substantial legal consequences.  For example, allowance effects plan voting rights in chapter 11 cases under Sections 1126(a) and 1129(b), and effects plan treatment rights under Section 1129(a)(7). 11 U.S.C. §§ 1126(a), 1129(a)(7), and 1129(b).  Allowance also effects distribution rights in chapters 7 and 11 under Section 726(a)(2). 11 U.S.C. § 726(a)(2).  Moreover, allowance of claims

---

[4] The court also notes that although the Note does contain an attorneys fee provision, it limits Pleasant's rights to "reasonable attorney's fee not exceeding a sum equal to fifteen percent (15%) of the outstanding balance owing on said Note, plus all other reasonable expenses" incurred in collecting the Note.  Thus, here, if the Note controlled, Pleasant would be limited to a maximum of $65,973.59, which is 15% of the $439,825.73 balance that was not paid by June 2006.

effects the substantive rights of the claimant, the debtor, and other parties-in-interest. Pleasant has cited no authority for the proposition that an unsecured claim arisingunder a note and guaranty can be liquidated and established by an order allowing the claim, yet substantive rights under the note and guaranty can continue independent of the claim allowance.  This Court has found no case which so holds and does not adopt that position.

Further, Pleasant exchanged any rights he had under the Note and Guaranty for distributions under the Plan.[5]  The Plan expressly provides that all prepetition notes and instruments were extinguished by the Plan, and that distributions under the Plan are in full satisfaction of all Allowed Claims. [dkt item 784, § 5.2.2, 6.18]

The Plan contains no provision for attorneys fees for the holder of an allowed unsecured claim that is not timely paid by the Trustee.  The Trustee relies on Section 13.2 of the Plan, which provides:

> **No Attorneys' Fees.** The Debtors shall pay no attorneys' fees with respect to any Claim or Interest, except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

 [dkt item 784, § 13.2]  This provision, however, does not end the analysis.  Section 13.2 only limits the Trustee's obligation to pay attorneys fees to those allowed by the Court. Section 13.2 does not state that attorneys fees could never be recovered against the TLC estate or the trust.

The Plan is to be treated as a contract between the Plan proponents and the creditors and parties-in-interest. *See*, *e.g.*, *In re Freidberg*, 192 B.R. 338, 341 (S.D.N.Y. 1996); *In re L&V Realty Corp.*, 76 B.R. 35, 37 (Bankr. E.D.N.Y. 1987).  This Plan contains no provision that a breach of the Plan itself can give rise to a right to recover attorneys

---

[5] Pleasant specifically voted in favor of confirmation of the Plan. Regardless, Pleasant is bound by the provisions of the confirmed Plan.

fees by an aggrieved party.

Further, the Plan states at Section 11.3. that New York law governs.  New York law follows the American rule, under which each sides bears its own attorneys fees, absent a fee shifting agreement, statute, or rule. *See Hooper Assocs. Ltd., v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491, 548 N.E.2d 903, 904 (1989) ("[A]ttorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute, or court rule.").  Here, Pleasant's claims for attorneys fees fail because the Plan and the Claims Order are governed by the "American Rule," and, as such, each side bears its own attorney's fees incurred during litigation.

In *Hooper*, the plaintiff sued the defendant for breach of contract, breach of express and implied warranties, and fraud in the inducement.  The plaintiff also asserted an indemnity claim for attorney's fees pursuant to Article 9 (A) of the written contract.  At trial, the parties agreed to sever the claim for attorney's fees, reserving it for decision by the court after the jury had decided the remaining causes of action. *Id.* at 489-90.

After trial, the trial court awarded the plaintiff nominal damages of one dollar and allowed the plaintiff to recover attorneys fees. On appeal, the Appellate Division affirmed and granted defendant leave to appeal to the Court of Appeals on the following certified question: "Was the order of the Supreme Court, as affirmed by this Court, properly made?" *Id.* at 490-91.

The Court of Appeals reversed the allowance of attorneys fees to the plaintiff.  In so doing, the court stated:

> Under the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule.  It is

> not uncommon, however, for parties to a contract to include a promise by one party to hold the other harmless for a particular loss or damage and counsel fees are but another form of damage which may be indemnified in this way.

*Hooper,* 74 N.Y.2d at 491 (internal citations and footnotes omitted). The court further stated that the indemnity clause of Article 9(A) of the contract did not "contain language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant." *Id.* at 492; *see also Promuto v. Waste Mgmt., Inc.*, 44 F. Supp.2d 628 (S.D.N.Y.1999) (affirming *Hooper* court's finding that "defendants' obligation to indemnify plaintiffs for all damages, expenses and costs, including attorney's fees, associated with an action between the parties 'can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances'").

Here, no Plan provision allows Pleasant to recover attorneys fees in the event either the Trust or the Trustee breaches the Plan. Also, no provision in the Claims Order requires payment of the allowed amount in full or at any particular time, or provides for attorneys fees in the event of a breach of the Claims Order.

While the present dispute was under submission with this Court, the United States Court of Appeals for the Second Circuit issued its opinion in *Ogle v. Fidelity & Deposit Co. of Maryland*, 586 F.3d 143 (2d Cir. 2009). In *Ogle* the Second Circuit held that the Bankruptcy Code entitled an unsecured creditor to recover postpetition attorneys fees that were authorized by a prepetition contract but were contingent on postpetition events. *Ogle v. Fid. & Deposit Co. of Md.*, 586 F.3d at 147-48. The Second Circuit had allowed such claims in a case decided under the former Bankruptcy Act, in which current Bankruptcy Code Section 506(b) was discussed. *See United Merchs. & Mfrs., Inc. v. Equitable Life Assurance Soc'y of the U.S.*, 674 F.2d 134, 137-39 (2d Cir. 1982). In *Ogle*,

however, the Second Circuit was called upon to decide whether *United Merchants* survived statutory revisions to the Bankruptcy Code, as well as the United States Supreme Court's decision in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.* 549 U.S. 443 (2007). After carefully analyzing the various provisions of Sections 502 and 506, the Second Circuit held that the Bankruptcy Code does not bar an unsecured claim for attorneys' fees incurred postpetition if such attorneys fees are authorized by a prepetition contract of indemnity which is valid under applicable state law, regardless of the dispute in which the attorneys fees are incurred. *Ogle*, 586 F.3d at 148.

As the Second Circuit noted in *Ogle*, the Supreme Court in *Travelers* held that Section 502(b) does not bar an unsecured creditor's ability to recover attorneys' fees incurred postpetition to enforce prepetition rights. *Travelers* involved legal fees incurred postpetition solely to litigate issues of bankruptcy law, and started from the premise that "an otherwise enforceable contract allocating attorney's fees (*i.e.,* one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Travelers*, 549 U.S. at 448. The Supreme Court further held that none of the provisions of Section 502(b) provided for disallowance of the fees sought. Therefore, Travelers' claim for postpetition fees "must be allowed under §502(b), unless it is unenforceable within the meaning of §502(b)(1)." *Id.* at 449-50. By extension, the Second Circuit in *Ogle* found no basis under Section 502 to disallow a claim for attorneys fees incurred postpetition to enforce state law rights, even though such fees were not incurred to litigate bankruptcy issues, as in *Travelers*. *Ogle*, 586 F.3d at 147.

Here, both *Travelers* and *Ogle* are inapplicable, because no substantive right exists under principles of contract law to allow Pleasant's attorneys fees. Under New York law, made applicable to the Plan under Section 11.3, Pleasant is not entitled to recover his

postpetition attorneys fees incurred in enforcing his Plan and Claims Order rights.  Further, as noted above, Pleasant's rights under the Note and Guaranty merged into the Claims Order, and were extinguished by the Plan.

Even if this Court were to apply North Carolina law as Pleasant argues, the result would be the same.[6]  Indeed, North Carolina law may be even more restrictive on this issue.  *See, e.g., McGinnis Point Owners Ass'n. v. Joyner,* 522 S.E.2d 317, 320 (N.C. App. 1999) ("[A] party cannot recover attorneys' fees 'unless such a recovery is expressly authorized by statute.'").

The only remedies available to Pleasant within his Requested Relief in the event of a Plan breach by the Trustee are prejudgment and postjudgment interest, both of which this Court is awarding to him.[7]

### Even If Pleasant Were Entitled to Recover Attorneys Fees, He Failed to Properly Establish the Reasonable Amount Thereof

Even if Pleasant were entitled to recover attorneys fees, he failed to properly establish the reasonable amount thereof.  First, Pleasant violated this Court's Scheduling Order.  As noted above, on July 6, 2009, this Court issued a Scheduling Order for the Hearing, which established various prehearing requirements.  These included, *inter alia*, that the Trustee and Pleasant submit any direct testimony from any witness under their control, including experts, by affidavit signed by the witness(es), which affidavits had to be filed with the Court no later than September 10, 2009, at 5:00 p.m., and simultaneously served upon the opposing party by facsimile or electronic mail.  The Scheduling Order

---

[6] Pleasant alternatively argued an entitlement to attorneys fees under North Carolina law because the Note contains a North Carolina choice-of-law provision.

[7] Pleasant did belatedly seek an order of contempt against the Trustee and/or the Trust. However, these claims were not asserted in the Motion, were untimely under the July 6, 2009 Order, and will not be considered.

further required that any witness for whom an affidavit of direct testimony was filed had to appear at the trial for cross-examination.  Any objection to any portion of a witness affidavit, including evidentiary objections, had to be filed and served no later than September 14, 2009, at 5:00 p.m.  In addition, copies of the exhibits, other than those to be used for impeachment or rebuttal, had to be exchanged no later than September 10, 2009, at 5:00 p.m., with copies provided to the Court by September 14, 2009, at 5:00 p.m.

Pleasant did not supply any affidavit from a witness on attorneys fees, other than a written statement from Pleasant attesting that he had paid over $218,067.86 in attorneys fees.  Pleasant did not timely exchange any detailed fee statements or other documents supporting this request, other than onefee statement for the month of November 2004, which itemized $13,945.50 fees and $11, 214.29 in expenses.  Pleasant otherwise provided only summary billing statements he had received, and copies of checks he wrote.  The day before the September 17, 2009 hearing, Pleasant submitted some fifty (50) pages of detailed time records to the Trustee, but did not file or provide same with the Court.  At the Hearing, Pleasant sought to offer the detailed fee statements as rebuttal testimony, and the Trustee objected to the late submission.  The Court reserved ruling on the late submission.  Now, the Court now grants the objection to the late submission.

First, the detailed fee statements are direct evidence, not rebuttal evidence.  Second, no party sought relief from the July 6 Scheduling Order, which provided the parties two (2) months to prepare for trial—more than adequate time to compile and exchange trial evidence.  The only issues before the Court at the Hearing were the propriety of awarding Pleasant attorneys fees and the amount thereof, and the propriety of awarding Pleasant interest, and the amount thereof.  The parties were well aware that

reasonableness of attorneys fees was the central issue on which evidence would be taken, and that the supporting evidence thereon should have been timely exchanged. Pleasant's late submission of the detailed time records was an unfair surprise to the Trustee, and the Trustee would have been unduly prejudiced by their admission. The Trustee was not given adequate time to review the time records.  The late time records revealed, for example, that Pleasant entered into an agreement whereby his law firm would earn a cash premium of $35,000.00 if the Second Circuit issued a decision favorable to Pleasant, and that the parties agreed to reduce the premium to $10,690.75 after Pleasant was successful before the Second Circuit. [dkt item 1228]  The Trustee was not provided with a reasonable opportunity to prepare an inquiry as to why.

Therefore, the time records will not be admitted.  Without these time records, Pleasant cannot and did not meet his burden of proving the reasonableness of his requested fees.

The Second Circuit has recently addressed a litigant's burden of proof when seeking recovery of attorneys fees in *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009), and *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, et. al.,* 522 F.3d 182 (2d Cir. 2008).  The Second Circuit stated in *Arbor Hill* that the presumptively reasonable fee boils down to "what a reasonable, paying client would be willing to pay," given that such a party wishes "to spend the minimum necessary to litigate the case effectively." *Arbor Hill,* 522 F.3d at 184.  However, the Second Circuit further stated that the "presumptively reasonable fee" is a calculation which requires analysis—it

is not necessarily the same thing as the actual rate charged by a law firm.[8] *Id.* at 191.  In

*Simmons*, the Second Circuit held that a reasonable fee is generally to be calculated

based upon fees and hourly rates generally charged in the district in which the reviewing

court sits, and that such forum's prevailing rates are presumptively reasonable.  The

Second Circuit further held that a litigant must overcome this presumption with specific,

objective factors lending to the necessity of charging out-of-district rates. *Simmons*, 575

F.3d at 175-76.  Thus, in the Second Circuit in circumstances governed by *Simmons* and

*Arbor Hill*, the court's analysis of reasonableness begins with a determination of the

reasonable rate and reasonable fee in the district in which the reviewing court sit. *Id.*; *Arbor

Hill,* 522 F.3d at 191.   This Court has determined that *Simmons* and *Arbor Hill* would apply

to this dispute, as Pleasant's attorneys are professionals whose retention did not require

bankruptcy court approval.

Here, Pleasant has been represented by attorneys practicing in New York, New

York, located within the Southern District of New York.  This Court sits in the Eastern

District of New York.  The billing rates for Pleasant's counsel ranged from $130.00 per

hour for legal assistants, $280.00 for associates, to $400.00 to $540.00 per hour for

partners, but no evidence was presented as to the reasonableness thereof in this district

for lawyers of similar experience and qualifications as Pleasant's.[9]  Although Pleasant has

---

[8] This Court need not and does not reach whether or how *Simmons* and *Arbor Hill* are applicable or would be applied to bankruptcy professionals, such as debtor's counsel and creditors committee counsel, who are retained pursuant to Order of the Court, and are to be paid by the bankruptcy estate.  In *Arbor Hill*, in addressing a claim for prevailing parties' reasonable attorney's fee[s] under the Voting Rights Act of 1965, the Second Circuit attempted to simply the oft cited "lodestar" standards in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). *Simmons* involved requests for attorney's fees of  a prevailing party under the Americans With Disabilities Act, 42 U.S.C. § 12205, the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(f).

[9] This Court is not concluding that such rates are not reasonable as a matter of law, but simply noting that no evidence was presented on why such rates would or would not be reasonable in this district.

been well represented throughout this long battle, and is certainly entitled to his choice of

counsel, he has submitted no support for the reasonableness in this district of the rates

charged by his attorneys.

### Pleasant Is Entitled to Recover Prejudgment and Postjudgment Interest

As noted above, the Plan is a contract between, *inter alia*, the Trust and Pleasant,

and is governed by New York law.  As such, Pleasant is entitled to recover such

prejudgment interest as is allowable under New York law.  Pleasant seeks prejudgment

interest on the $439,825.73 he was not paid in June 2006, for the period from June 23,

2006, to July 27, 2009.

The Plan is silent with respect to the payment of interest in the event of a breach of

the Plan.  The Trustee asserts that Pleasant is not entitled to interest on the $439,825.73

because other claims remain unresolved under the Plan.  However, the only unresolved

claims the Trustee cannot pay are the Class 7 NCFE Subordinated Claim holders, which

are subordinate in time and right of payment to Pleasant and other Class 5B claims of

general unsecured creditors.  Therefore, Pleasant is entitled to full payment of his Claim

1015 regardless of the resolution of subordinate claims.

Pleasant is entitled to payment of prejudgment interest at the applicable rate from

time to time in effect under New York law from June 23, 2006, through July 27, 2009, on

the $439,825.73 he was not paid under the Claims Order and the Plan.  Under New York

law, "Interest shall be recovered upon a sum awarded because of a breach of performance

of a contract ...." N.Y.C.P.L.R. § 5001(a) (McKinney 2007).  Under New York law,

therefore, prejudgment interest is normally recoverable as a matter of right in an action at

law for breach of contract. *See Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 93-94 (2d Cir.

1984); *Julien J. Studley, Inc. v. Gulf Oil Corp.*, 425 F.2d 947, 950 (2d Cir.1969).

New York Civil Practice Law and Rules Section 5001 *et seq.* govern prejudgment interest, and provide:

> Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y.C.P.L.R. § 5001(b).  Section 5004 of New York Civil Practice Law and Rules further provides that interest accrues at the rate of nine percent (9%) per year, "except where otherwise provided by statute." N.Y.C.P.L.R. § 5004 (McKinney 2009).  No other applicable statute governs prejudgment interest here.  Further, because this is an action to enforce Pleasant's rights under the Plan and Claims Order following a breach by the Trustee, and to recover unpaid postpetition interest to which Pleasant was entitled, this Court has determined that New York law governs the award of prejudgment interest, but not the provisions of the Plan concerning the calculation of postpetition interest on allowed claims.

Thus, Pleasant is entitled to nine percent interest per year from June 23, 2006, through July 27, 2009, on the $439,825.73 he was not paid as was allowed under the Claims Order, which payment was not paid as and when due under the Plan.  The dates awarded herein for prejudgment interest are the dates as requested by Pleasant.

In addition, Pleasant is entitled to postjudgment interest on the prejudgment interest awarded hereunder.  Because the order to be entered in this dispute directing payment is a federal order or judgment, postjudgment interest thereon will be calculated at the federal rate, from the date of entry of the order hereon until paid**.** *See* 28 U.S.C. § 1961.

## **Conclusion**

For the reasons stated herein, Pleasant's request for attorneys fees should be denied, and interest is to be allowed as prescribed above. Pleasant's counsel is directed to submit an Order consistent herewith within fourteen (14) days following entry of this memorandum opinion.



**Dated: December 31, 2009**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**